UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-cv-80686-KLR

UNITED AIRLINES, INC.,
a Delaware corporation,

      Plaintiff,

v.

CLASSIC PROMOTIONS & PREMIUMS, INC.,
a Delaware Corporation, JOHN
VANGINHOVEN, individual, and MARK
VANGINHOVEN, individual,

      Defendants.
_____/

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

**INTRODUCTION**

      This civil action asserts claims for federal trademark infringement, common law trademark infringement, trademark dilution, false designation of origin, unfair competition, Florida Deceptive and Unfair Trade Practices Act violations and civil conspiracy arising out of Defendants' unauthorized uses of Plaintiff's famous federally-registered trademarks in connection with promotion of transportation and travel services. This matter is before the Court on Plaintiff's motion seeking a preliminary injunction restraining Defendants' violation of Plaintiff's rights in the United Trademarks until this matter can be tried on the merits.

**RELEVANT FACTS**

    a. *United and its famous trademarks.*

      United is a United States based and owned airline headquartered in Chicago, Illinois. *See Declaration of Mark Krolick, Managing Director, Marketing & Product Development for United filed herewith (hereinafter "Krolik Decl.") at ¶ 3.* For over eighty years, United has been one of

1

the largest commercial airline operators and transportation service providers in the world. *Id. ¶ 4.* United (together with United Express) operates an average of 5,446 flights a day to more than 370 airports across six continents. *Id. ¶ 5.* In October 2010, United Air Lines, Inc. completed a legal merger with another major U.S. carrier, Continental Airlines, Inc. ("Continental"), under which both entities became subsidiaries of United Continental Holdings, Inc.  On March 31, 2013, United Air Lines, Inc. merged into Continental, and Continental was renamed as "United Airlines, Inc." *Id. ¶ 6.* United Airlines, Inc. currently owns all trademarks belonging to both previous companies. *Id. ¶ 7.*

United owns numerous trademarks and trademark registrations domestically and internationally. *Id. ¶ 8.* The trademark registrations relevant to the instant matter include:

  a. U.S. Reg. # 676,462 for UNITED in class 39 for "transportation of persons, mail, and property by air." First used on 2-1-1929.

  b. U.S. Reg. # 1,044,442 for ![logo] in class 39 for "air transportation services." First used on 6-17-1974.

  c. U.S. Reg. # 1,517,513 for UNITED VACATIONS in class 39 for "developing, arranging, and making reservations of vacation and tour packages for others." First used on 4-8-1985.

  d. U.S. Reg. # 1,578,151 for UNITED VACATIONS in class 39 for "travel agency services." First used on 4-8-1985.

  e. U.S. Reg. # 1,598,941 for ![UNITED AIRLINES logo] in class 39 for "transportation of persons, property and mail by air." First used on 6-17-1974.

  f. U.S. Reg. # 1,750,451 for UNITED AIRLINES in class 39 for "transportation of persons, property and mail by air." First used on 6-17-1974.

  g. U.S. Reg. # 1,857,943 for ![UNITED AIRLINES logo] in class 39 for "transportation of persons, property and mail by air." First used on 1-11-1993.

  h. U.S. Reg. # 2,076,868 for ![globe logo] in class 39 for "transportation of persons, property and mail by air." First used on 1-11-1990.

2

      i. U.S. Reg. # 2,022,051 for ◪ in class 39 for "transportation of persons, property and mail by air." First used on 1-11-1990.

      j. U.S. Reg. # 1,993,534 for CONTINENTAL in class 39 for "air transportation of persons and property." First used on 7-1-1937.

      k. U.S. Reg. # 2,288,901 for CONTINENTAL AIRLINES in class 39 for "Airline transportation services." First used on 7-1-1937.

*Collectively, the trademarks identified above will be referred to as the "United Trademarks." Id. ¶ 9.*

Over the years, United has spent millions of dollars to promote the United Trademarks as well-known identifiers of its quality services. *Id. ¶ 10.* United advertises the United Trademarks in relation to its transportation and travel services in multiple media including print media, point of sale advertising, billboards, on the airplanes, on the Internet, and through broadcast and cable channels in the United States and other countries. *Id. ¶ 11.*

The United Trademarks are known worldwide and have been registered in multiple countries. *Id. ¶ 12.* The United Trademarks have become so identified with United's services in the United States over the last 80 years that they are famous and well-known source identifiers. *Id. ¶ 13.* United values and defends its reputation as a quality provider of transportation and travel agency services. *Id. ¶ 14.*

    b. ***Classic Promotions and the VanGinhoven Brothers.***

Classic Promotions & Premiums, Inc. ("Classic Promotions") is a corporation registered under the laws of the State of Delaware. The company is owned in equal portions by brothers John and Mark VanGinhoven. *Id. ¶ 15.* Classic Promotions is in the direct mail and incentives business. *Id. ¶ 16.*

For the direct mail business, Classic Promotions prepares print advertisements and mails promotional materials for third parties. Classic Promotions gets paid a certain amount for each mailed promotional item. *Id. ¶ 17.*

Classic Promotions also provides vacation incentive mailings. These are certificates sent out to consumers offering travel incentives such as hotel stays or airfare deals. *Id. ¶ 18.* For the incentive business, Classic Promotions purchases travel certificates from vacation certificate companies and then resells them to the consumer. Classic Promotions makes a profit on the sale. *Id. ¶ 19.*

   c. *The Infringements Begin in 2007.*

On or about October of 2007, United (which at the time was Continental) discovered unsolicited postcards which had been sent to consumers offering travel incentives and prominently displaying some of the United Trademarks, including the CONTINENTAL AIRLINES trademark and the GLOBE DESIGN trademark. *Id. ¶ 20.*

On October 26, 2007, United's counsel wrote to John VanGinhoven at Classic Promotions demanding that he and Classic Promotions immediately cease use of the famous United Trademarks in a manner clearly aimed at creating the visual impression that the offer was sponsored, authorized or approved by United. *Id. ¶ 21.*

On November 8, 2007, United's counsel received a response from an attorney named Douglas A. Daniels, on behalf of Classic Promotions, which indicated that Classic Promotions had "stopped printing the postcard attached to [the] letter of October 26, 2007." Furthermore, counsel represented that Classic Promotions "agrees to never print that postcard again or to use any trademark of Continental Airlines in any unlawful manner, including any manner that might create confusion, without the express authorization of Continental Airlines." *Id. ¶ 22.*

Based upon the assurances from Classic Promotions' counsel, United took no further action at the time. *Id. ¶ 23.*

### d. *The Infringements Restart in 2012.*

On or about April of 2012, United again discovered that Classic Promotions and the VanGinhovens were sending out postcards using the famous United Trademarks in a manner clearly aimed at creating the visual impression that the offer was sponsored, authorized or approved by United. In tiny print, on the lower left hand corner of the card, a disclaimer was added stating "[t]his offer is not sponsored by or affiliated with United Airlines but they are a major supplier." This disclaimer was almost not readable and did not cure the unauthorized and excessive use of United Trademarks and the obvious attempt to create an impression of affiliation or authority. *Id. ¶ 24.*

The mail permit on the bulk postage stamp was 3950. The United States Postal Service ("USPS") confirmed that Mr. VanGinhoven and Classic Promotions owned the first-class permit number contained on the unsolicited postcards. *Id. ¶ 25.*

On April 24, 2012, United's counsel wrote to Mr. VanGinhoven reminding him of his earlier promise and advising him that the infringing activity must stop. *Id. ¶ 26.*

On May 15, 2012, United's counsel received a response from new counsel for Classic Promotions, Ava Doppelt. In her letter, counsel stated that "our client has decided to discontinue all the mail pieces attached to your letter, and confirms that it will not use the globe design on any future mailings." Counsel continued, "To the extent it might use the word 'United' it will not do so in any way that would be likely to cause confusion with your company's trademarks." Counsel concluded by stating, "[A]lthough our client admits no liability with respect to your company, you can feel confident that you will not see any future mailings originated with Classic Promotions that should cause you any concern." *Id. ¶ 27.*

5

Despite these assurances, on June 4, 2012, United received yet another postcard using the catchphrase "Fly Away Escape" and the United Trademarks without authority. *Id. ¶ 28.* Later the same day, United's counsel wrote to counsel for Classic Promotions challenging the further infringement and demanding that they stop. United's counsel specifically noted in the letter that the new card used the same mailing permit previously associated with Classic Promotions. *Id. ¶ 29.*

On June 8, 2012, counsel for Classic Promotions responded that the mailing at issue had been sent prior to the previous letter and renewing her assurances that no further mailings would be sent by Classic Promotions using the United Trademarks. *Id. ¶ 30.*

   *e.  **The Most Recent Infringement.***

Early this year, United discovered yet another card had been mailed offering travel incentives and using the United Trademarks without authority. *Id. ¶ 31.* This card used a new mailing permit that was different from the one previously associated with Classic Promotions. *Id. ¶ 32.*

United's counsel submitted a request to the postal service under the Freedom of Information Act, and they confirmed that the mailing permit belonged to Classic Promotions. *Id. ¶ 33.*

Based on this information, on June 4, 2013, United's counsel wrote to counsel for Classic Promotions noting the renewed infringement and demanding more concrete and specific disclosures in view of the continuing infringement and the evidence that Classic Promotions had tried to conceal their infringing conduct. *Id. ¶ 34.*

Despite the previous letters exchanged between the parties and the fact that Classic Promotions was on clear notice not to use the marks, counsel for Classic Promotions responded

that her client's customer, Holiday Travel of America, a third-party vacation certificate company, had obtained permission to use the United Trademarks from MLT Vacations. *Id. ¶ 35.*

Classic Promotions provided no written evidence for this alleged authorization or any explanation for why it breached its prior promises to discontinue use. *Id. ¶ 36.*

MLT Vacations is a fictitious name of MLT, Inc., a wholesale travel company in the business of producing and offering travel packages to the public. *Id. ¶ 37.* MLT Vacations licenses certain rights to use certain United Trademarks on its site and in its promotions subject to United's consent. *Id. ¶ 38.* MLT Vacations does not have authority to grant a third party rights to use the United Trademarks. *Id. ¶ 39.* United has contacted MLT and MLT has denied giving Holiday Travel authority to use the United Trademarks. *Id. ¶ 40.*

Classic Promotions and the VanGinhovens have used the famous and well-known United Trademarks without permission or authority. *Id. ¶ 41.* By repeatedly misrepresenting that they would stop use and then renewing unauthorized use under a different mailing permit, Classic Promotions and the VanGinhovens have shown that their use of the famous and well-known United Trademarks has been knowing and intentional. *Id. ¶ 42.*

A review of online comments by travel customers shows actual confusion as to the source, authority and affiliation of Classic Promotions' cards. *Id. ¶ 43.* The same comments cast Classic Promotions in a very negative light. *Id. ¶ 44.* Moreover, United has received inquiries from customers regarding whether United sponsors or is affiliated with the postcards issued by the Defendants. Defendants' actions are therefore damaging the goodwill associated with the famous and well-known United Trademarks. *Id. ¶ 45.*

United believes that if Classic Promotions and the VanGinhovens are not enjoined from such conduct, their actions could cause irreparable harm to United's reputation and to the valuable goodwill in its United Trademarks. *Id. ¶ 47.* If consumers cannot trust and rely on

7

marketing materials bearing the United Trademarks, they will choose to send their business elsewhere. *Id. ¶ 48.* Furthermore, United is concerned that consumers will be hurt by fraudulent schemes as a result of their innocent trust in these unauthorized uses of the United Trademarks. *Id. ¶ 49.*

United needs the issuance of an injunction to stop this dilution and infringement of its famous marks. *Id. ¶ 50.*

## ARGUMENT

### I. PRELIMINARY INJUNCTIVE RELIEF IS FULLY WARRANTED

The Eleventh Circuit has noted that in trademark infringement actions, injunctive relief is "the order of the day," *SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 77 F.3d 1325, 1336 (11th Cir. 1996), since it helps to prevent continuing injury to the trademark owner and to the public. In order to obtain a preliminary injunction, the following factors are considered when determining whether a preliminary injunction should be granted:

(1) The plaintiff's likelihood of success on the merits;

(2) Whether the plaintiff will suffer irreparable harm if a preliminary injunction were denied;

(3) The injury to the defendant in the event that a preliminary injunction were granted; and

(4) Whether the grant of a preliminary injunction would serve the public interest.

*Warren Pub. Inc. v. Microdos Data Corp.*, 115 F.3d 1509 (11th Cir. 1997); *Gold Coast Publications, Inc. v. Corrigan*, 42 F.3d 1336, 1343 (11th Cir. 1994). As discussed below, each of these factors weigh in favor of preliminary injunctive relief.

## II. PLAINTIFF HAS A HIGH LIKELIHOOD OF SUCCESS ON THE MERITS

Success on the merits of Plaintiff's Federal trademark infringement, false designation of origin, and unfair competition claims will require Plaintiff to show that that the United Trademarks are valid and distinctive, that Plaintiff used the United Trademarks prior to Defendants' use of their similar marks, and that Defendants have used similar marks in a manner which is likely to cause confusion. *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.,* 122 F.3d 1379, 1382 (11th Cir. 1997); *See Conagra Inc. v. Singleton*, 743 F.2d 1508, 1512 (11th Cir. 1984). Success on the merits of Plaintiff's dilution claim will require a showing that 1) the United Trademarks are famous; 2) the Defendants adopted their similar marks after the United Trademarks became famous; 3) the Defendants' similar marks are likely to dilute the United Trademarks; and 4) the Defendants' use is commercial and in commerce. *See* 15 U.S.C. § 1125(c); *GMC v. Phat Cat Carts, Inc.*, 504 F. Supp. 2d 1278, 1286 (M.D. Fla. 2006).

Plaintiff's common law claims rely on the same elements as those already discussed, and therefore Plaintiff is likewise likely to succeed on the merits of these claims. *See Chanel Inc. v. Italian Activewear of Fla. Inc.*, 931 F.2d 172, 1475 (n. 3) (11th Cir. 1991) ("if there is no genuine issue of fact as to trademark infringement, there is none as to unfair competition, either."); *Victoria's Cyber Secret Ltd. Partnership v. V Secret Catalogue, Inc.*, 161 F. Sup.2d 1339, 1355 (S.D. Fla. 2001) (same facts and legal analysis giving rise to summary judgment on claims for federal trademark infringement, federal unfair competition, and federal dilution impel a finding of unfair competition and dilution under common law).

A. Infringement, False Designation of Origin, and Unfair Competition

    1. *The United Trademarks are valid and strong*

A mark must be distinctive in order to be entitled to protection. *New Century Mortgage Corp. v. 123 Home Loans, Inc.*, 2006 WL 3665985 *3 (S.D. Fla. Nov 17, 2006); *Freedom Sav. &*

9

*Loan Ass'n v. Way*, 757 F.2d 1176 (11th Cir. 1985). The registrations related to the United Trademarks are incontestable and constitute *prima facie* evidence of the validity and distinctiveness of the marks dating to their first use in commerce. "If a mark is incontestable, then it is presumed to be ...a relatively strong mark." *Dieter v. B & H Indus.*, 880 F.2d 322, 328 (11th Cir. 1989). *See also Citibank, N.A. v. Citibanc Group, Inc*., 724 F.2d 1540, 1549 (11th Cir. 1984) ("Incontestability bars the defense that the mark ... lacks secondary meaning").

In addition to the registrations, the long use of the mark is also a factor which renders the marks highly distinctive. One of the marks extends as far back as 1929 while the others have been in use from 13 to 34 years.[1] It is not just the length of use but the substantial promotion made by United of the marks during those years which contribute to their role as strong source indicators. *See Krolik Decl. ¶¶ 10-14*; *See E. Remy Martin & Co., S.A. v. Shaw-Ross International Imports, Inc.,* 756 F.2d 1525, 1532 (11th Cir. 1985) (Held that the marks in question were a strong identification of source by virtue of long use and extensive promotion); *Investacorp Inv., v. Arabian Investment Banking Corporation (Investcorp) E.C.*, 931 F.2d 1519, 1525 (M.D. Fla. 1993), *Cert Denied,* 502 U.S. 1005, 1991, (citing *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1513 (11th Cir. 1984)). *Chase Federal Savings and Loan Ass'n v. Chase Manhattan Financial Services Inc*., 681 F. Supp. 771, 779 (S.D. Fla. 1987). In fact, the marks are so strong and well known that they have acquired the status of famous and well-known marks deserving of broad protection. *United Airlines, Inc. v. United Airlines Dot Com,* 2002 WL 31681425 (UDRP-ARB Dec. 2002) (United trademarks are famous and strong marks). The facts related to this element support granting a preliminary injunction.

2. *Plaintiff Has Priority of Use*

---

[1] "A certificate of registration of a mark [is] prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate." 15 U.S.C. § 1057(c) (2006).

10

In this case, it is undisputed that Plaintiff is the senior user of the United Trademarks. Plaintiff created and developed the goodwill in the United Trademarks since the 1920s. Defendants only started to use the counterfeit trademarks in 2007. *See Krolick Decl. ¶ 9*. Priority is not in dispute. The facts related to this element support granting a preliminary injunction.

3. *Defendants' Activities are Likely to Confuse the Public*

The central inquiry in an infringement analysis is "whether there is a 'likelihood of confusion' between the names and symbols used by the two parties." *Freedom Sav. and Loan Ass'n v. Way*, 757 F.2d 1176, 1179 (5th Cir. 1985); *Popular Bank of Florida*, 9 F.Supp.2d 1347 at 1358; *see also World Carpets, Inc. v. Dick Littrell's New World Carpets,* 438 F.2d 482, 487 (5th Cir. 1971). The inquiry into the likelihood of confusion focuses on seven factors: (1) the distinctiveness of the mark at issue; (2) the similarity of the marks; (3) the similarity of the services; (4) the similarity of service outlets and customers; (5) the similarity of advertising media utilized; (6) the defendant's intent; and (7) any actual confusion. *Coach House Restaurant, Inc v. Coach & Six Restaurants, Inc.*, 934 F.2d 1551, 1561 (11th Cir. 1991); *Dieter*, 880 F.2d at 316; *Popular Bank of Florida,* 9 F. Supp. 2d 1347 at 1358. Each of these factors either weighs in favor of Plaintiff or is a neutral factor.

<u>i.  The United Trademarks are strong and famous</u>

As previously discussed above, the United Trademarks are, by reason of their longevity, widespread use, and extensive promotion, strong marks as well as famous and worthy of broad protection. *United Airlines, Inc. v. United Airlines Dot Com,* 2002 WL 31681425 (UDRP-ARB Dec. 2002) (United trademarks are famous and strong marks); *See also Krolik Decl. ¶¶ 10-14*. United has spent millions of dollars over the last 80 years to promote its marks domestically and abroad. *Id.* Courts have held that even descriptive words used as trademarks which acquire

11

secondary meaning can become relatively strong marks.  *See Investacorp*, 931 F.2d at 1522. Here, where the United Trademarks are strong in both inherent and acquired distinctiveness, this factor weighs heavily in favor of Plaintiff.

### ii. Defendants are using identical and near-identical versions of the Mark

Here Defendants' counterfeit marks are identical to the genuine United Trademarks.  The similarity of the marks is not in dispute.  The facts related to similarity of the marks support granting a preliminary injunction.

### iii. The parties' services, target customers, and channels of trade are highly similar, if not identical

The services offered by Defendants are vacation promotions and travel promotions which are identical to services offered by United and its licensees.  The counterfeit marks are used, in fact, to provide United services in a manner which falsely suggests United's knowledge, approval, authority, consent and sponsorship.  The target customers are therefore the same customers that would be interested in purchasing travel services from United.  *See Krolik Decl. ¶ 43, 45*.  Under the circumstances, there is an extreme likelihood of consumer confusion.  In fact, as shown by on-line communications between consumers addressed below, actual confusion and an erosion of goodwill already exists.  The facts related to this factor support granting a preliminary injunction.

### iv. Defendants have manifested their intent to confuse and deceive

The mere copying of the United Trademarks by Defendants, without authority, and for their personal gain is enough to justify the inference that there is confusing similarity.  *Frehling Enters., Inc. v. International Select Group, Inc.*, 192 F. 3d 1330, 1335 (11th Cir. 1999); *Babit Elecs., Inc. v. Dynascan Corp.*, 38 F. 3d 1161, 1179 (11th Cir. 1994); *Sigma Chi Fraternity v. Sethscot Collection*, 2000 U.S. Dist. LEXIS 6332, at *24 (S.D. Fla. 2000).  Indeed, "[i]f it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from

the plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity." *Popular Bank of Florida v. Banco Popular de Puerto Rico*, 9 F.Supp. 1347 (S.D. 1998) (*citing Frehling Enters., Inc. v. Int'l Select Group Inc.*, 192 F.3d 1330, 1335 (11th Cir.1999)). In this instance, Defendants are using counterfeit copies of the United Trademarks directly in relation to Defendants' services. They are doing this in order to benefit from the goodwill related to these marks in their promotions.

Evidence of their intent can also be clearly gleaned from Defendant's conduct when confronted with their wrongful actions. When Defendants were asked to stop the wrongful use, in each instance, they agreed and promised to stop. *See Krolick Decl. ¶¶ 22, 27 and 30.* After a short respite, they restarted. This cycle or broken promises occurred on at least three separate occasions. When they resumed their wrongful use, they changed their mail permit in order to disguise their activities. *Id. ¶¶ 25, 29, 32, 33 and 42.* Defendants' conduct constitutes clear evidence that Defendants acted deliberately and in bad faith.

> v. Defendants use of a disclaimer in some of their mailings did not diminish and may have worsened the risk of confusion.

Defendants have anticipated a likely legal challenge and have included a disclaimer in small print in some of their mailings. These disclaimers are ineffective and do not justify the broad use of word marks and logos. In fact, many courts have held that a disclaimer does not serve to cure an otherwise clear case of likely confusion. *Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 185 U.S.P.Q. 364 (5th Cir. 1975), *cert. denied*, 423 U.S. 868 (1975) (reversing lower court injunction permitting use with disclaimer: "insufficient to remedy the illegal confusion"); *United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 209 U.S.P.Q. 457 (3d Cir. 1981) (disclaimer not sufficient); *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 77 U.S.P.Q.2d 1968 (10th Cir. 2006) (vague disclaimer on Web site

does not dispel the likelihood of initial interest confusion caused by use of plaintiff's trademark in defendant's metatag)

Consumer studies indicate that disclaimers are ineffective in curing customer confusion over similar marks. 4 McCarthy ON TRADEMARKS AND UNFAIR COMPETITION § 23:51 (4th ed.) In fact, in cases such as this where the disclaimer is in very small print or ambiguously worded, the use of a disclaimer can serve to aggravate, not alleviate, confusion over brands. *Id. citing, e.g., E. & J. Gallo Winery v. Gallo Cattle Co.*, 12 U.S.P.Q.2d 1657, 1989 WL 159628 (E.D. Cal. 1989), *modified, aff'd*, 955 F.2d 1327, 21 U.S.P.Q.2d 1824 (9th Cir. 1992), *amended*, 967 F.2d 1280 (9th Cir. 1992) (Survey results with and without a prominent disclaimer of connection showed that a disclaimer had very little impact in reducing the level of confusion. In one market survey, the confusion level was even slightly higher with a disclaimer than without. The court granted a near absolute injunction against use of a personal name.); *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1551 (S.D. Tex. 1996), aff'd on point, 155 F.3d 526, 48 U.S.P.Q.2d 1065 (5th Cir. 1998) ("inconspicuous disclaimers" were not sufficient to eliminate golfers' confusion that defendant golf course look-alike holes were sponsored or approved by plaintiff golf courses); *Cartier, Inc. v. Deziner Wholesale, L.L.C.*, 55 U.S.P.Q.2d 1131, 2000 WL 347171 (S.D. N.Y. 2000) (disclaimer in print that is 16 times smaller than defendant's use of plaintiff's trademark is not effective to offset likely confusion). Defendants' alleged disclaimer on one side of the card states "[v]acation packages are provided by United Vacations along with other major travel suppliers, but are not a sponsor of this offer," together with the prominent United Vacations trademark above in type many times bigger at minimum suggests that United is aware of the offer and authorized the use of its trademark. The second disclaimer on the other side of the card in even smaller print states "[t]his promotion is not sponsored by or affiliated with United Airlines but they are major suppliers." This second disclaimer worsens matters by

14

suggesting that United is aware and knowingly supplies the services and authorizes the use of its trademark for this promotion. Consumers are likely to see that as a sign of approval by United and to hold United accountable for the success or failure of the overall promotion. The disclaimers do not diminish the likelihood of confusion.

### vi. There is evidence actual confusion

While evidence of actual confusion is not required to support a finding that a likelihood of confusion exists, such evidence of actual confusion is the best evidence of likelihood of confusion. *E. Remy Martin & Co. v. Shaw–Ross Inter'l Imports, Inc.,* 756 F.2d 1525, 1529 (11th Cir.1985). No absolute measure exists as to how many instances of actual confusion are sufficient to establish this factor. *Popular Bank of Florida v. Banco Popular de Puerto Rico*, 9 F. Supp. 2d 1347, 1360 (S.D. Fla. 1998). Rather, the court must evaluate the evidence of actual confusion in light of the totality of the circumstances involved. *AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, at 1543 (11th Cir.1986).

As shown by the on-line postings of numerous users and by calls received by United, there is confusion in the marketplace as to whether United knows and allows Defendants' use of its marks. *See Krolick Decl. ¶¶ 43 (and attachment thereto) and 45.*[2] Since the same postings show a great deal of ambivalence towards Defendants' promotions, it is highly likely that consumers will transfer this ambivalence to United. This evidence strongly supports a finding of likelihood of confusion.

---

[2] A statement by a customer offered to establish confusion in a trademark litigation is offered to prove the truth of the belief of the declarant and is therefore properly classified as hearsay but that the statement is admissible because it falls within Fed.R.Evid. 803(3), the state of mind exception. *Ocean Bio–Chem, Inc. v. Turner Network Television*, 741 F.Supp. 1546 (S.D.Fla.1990)(citing 4 J. Weinstein, M. Berger, D.Epstein, WEINSTEIN'S EVIDENCE (1988 and Supp.1990).

### vii. Defendants may not claim a fair use of the mark

Generally, a party may fairly use a third party's trademark, in very limited circumstances, to inform the public that it is legally imitating or reselling the goods or services of another. Here, where Defendants used United Trademarks and imagery to describe United products along with third party services and promotions, fair use can only be successfully invoked if (1) "the product or service in question [is] one not readily identifiable without use of the trademark;" (2) "only so much of the mark or marks [is] used as is reasonably necessary to identify the product or service;" and (3) "the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Liquid Glass Enterprises, Inc. v. Dr. Ing. h.c.F. Porsche AG*, 8 F. Supp. 2d 398, 402 (D.N.J. 1998) *citing New Kids on the Block v. News America Pub., Inc.,* 971 F.2d 302, 308 (9th Cir.1992). Fair use will not avail Defendants because they went beyond what was reasonable by using the words "United", "United Airlines", and "United Vacations" and availed themselves of Plaintiff's valuable stylized and design marks. Fair use does not justify the use of the distinctive stylized or logo form of a trademark where the plain form is available. *See World Impressions, Inc. v. McDonald's Corp*., 235 F. Supp. 2d 831, 843 (N.D. Ill. 2002) (use of stylized DISNEYLAND mark in conjunction with Disney's castle design logo on a map of California attractions went beyond referencing Disney's location to imply Disney endorsed the map); *Toho Co. Ltd. v. William Morrow & Co. Inc.,* No. 98-0925, 1998 U.S. Dist. LEXIS 11920, at *7 (C.D. Cal. Apr. 15, 1998) (use of bold orange stylized GODZILLA mark, similar to licensed mark, exceeded the "legitimate referential purpose" of nominative fair use). Furthermore, by their use of the trademarks and by their use of the misleading disclaimer, Defendants created the illusion that United knew of the promotion and, while it might not sponsor it, it tacitly approved it through the use of its famous trademarks. Defendants may not avail themselves of a fair use defense.

B. Dilution

Although the Defendants are using the counterfeit trademarks to advertise identical services to those offered by United, to the extent that the marks could be said to be used for different functions such as general promotion, their use constitutes dilution. Success on the merits of Plaintiff's dilution claim will require a showing for a given mark at issue that 1) the United Trademarks are famous; 2) the Defendants adopted their similar marks after the United Trademarks became famous; 3) the Defendants' similar marks are likely to dilute the United Trademarks; and 4) the Defendants' use is commercial and in commerce. *See* 15 U.S.C. § 1125(c); *GMC,* 504 F. Supp. 2d. at 1286.

The second and fourth elements are already established, as set forth above in the analysis of the infringement claims. Turning to the first element—"fame"— a court can consider any factors it wishes. The non-exclusive list factors in 15 U.S.C. § 1125(c)(1) includes:

> (1) the degree of inherent or acquired distinctiveness; (2) the duration and extent of use of the mark; (3) the duration and extent of advertising and publicity; (4) the geographical extent of the area in which the mark is used; (5) the channels of trade in which the mark is used; (6) the degree of recognition of the mark in the areas and channels of trade used by the owner and the entity allegedly diluting the mark; and (7) the nature and extent of use of the same or similar marks by third parties; and (8) whether the mark is registered on the principal register.

Analysis of these factors leads to the conclusion that the United Trademarks are famous: (1) The marks have a high degree of both inherent and acquired distinctiveness; (2) and (3) the marks have been widely used in advertisement and promotion for over a decade in most cases and in the case of the United mark, since 1929, resulting in a high degree of recognition of the marks in in the United States and worldwide; (4) the marks are widely used throughout the U.S. and internationally for transportation services, reservation services and vacation planning; (5)

17

and (6) United promotes its marks to the travelling and vacationing public, the same target as the Defendants and a group amongst which United Trademark are widely known; (7) there is no legal third-party use of similar marks; (8) the marks are registered on the principal register and have become incontestable.

Finally, Defendants' use of an identical or near-near identical mark to Plaintiff's Mark demonstrates the likelihood of dilution.  *See Nike Inc. v. Variety Wholesalers*, 274 F. Supp.2d 1352, 1372 (S.D. Ga. 2003); *Pinehurst, Inc. v. Wick*, 256 F. Supp.2d 424, 431-32 (M.D. N.C. 2003); *Savin Corp. v. Savin Group*, 391 F.3d 439, 452-53 (2d Cir. 2004); *GMC,* 504 F. Supp. 2d at 1285-87.  Plaintiff is likely to succeed on its dilution claim.

### III.     PLAINTIFF IS FACED WITH IRREPARABLE INJURY

Plaintiff has made a strong showing of likelihood of confusion and therefore there is a presumption of irreparable harm.  *See E. Remy Martin & Co. v. Shaw-Ross Inter'l Imports, Inc.*, 756 F.2d 1525, 1529 (11th Cir. 1985).  Without an injunction, it is highly likely that the relevant consuming public will continue to be confused or deceived into mistakenly attributing a connection between Plaintiff and Defendants.  Such confusion threatens to undermine the market for Plaintiff's services, and will irreparably injure Plaintiff's goodwill in the United Trademarks and otherwise harm Plaintiff's business reputation.  This harm could rise exponentially during the course of the suit if a number of travelers are defrauded and attribute knowledge or acquiescence to the scheme on the part of United because it allowed its marks to appear on the promotions.  A reputation for reliability, quality and safety is particularly important in the travel industry.  Plaintiff will surely suffer further irreversible harm and losses if Defendants can continue their wrongful behavior while Plaintiff awaits a trial on the merits.

**IV.     DEFENDANTS WILL NOT BE UNDULY HARMED BY THE INJUNCTION**

The decision with respect to preliminary injunctive relief turns in part on a balancing of the relative injuries to the parties who would be affected by the granting or denial of such relief. A denial of the preliminary injunction, which Plaintiff seeks, would permit Defendants to continue trading off of the goodwill of Plaintiff's business and reputation until a trial is held and a decision is reached on the merits. Furthermore, they would be able to do new mailings which will further compound confusion to potentially tens of thousands of consumers. By doing so, those consumers would be at risk of being deceived and potentially defrauded by reliance upon the goodwill in the United Trademarks. The irreparable and immediate nature of the injury, which Plaintiffs would sustain as a result of Defendants' false connection to Plaintiff, has been discussed above.

On the other hand, Defendants can continue to send out mailings for other companies using other trademarks. Defendants need only cease the use of counterfeit United Trademarks in connection with their business in order to comply with the requested injunction, which would cause no harm to any legitimate and legal business interest. Considering the number of other carriers in the marketplace, avoiding United should be a small inconvenience. For the same reasons, Plaintiff requests that the Court, in granting the injunction, waive the requirement of a bond or set a nominal bond.

**V.     THE INJUNCTION WILL SERVE THE PUBLIC INTEREST**

The public interest will be served if the injunction is granted because it will prevent confusion in the marketplace. *See Kason Indus., Inc. v. Component Hardware Group, Inc.,* 120 F.3d 1190, 1207 (11th Cir. 1997) (there is a strong public interest in preventing deception in the marketplace by consumers). Because Plaintiff has shown a likelihood of confusion stemming

from Defendants' unauthorized use of the United Trademarks, a preliminary injunction weighs in favor of the public interest.

## CONCLUSION

For the reasons set forth above, Plaintiff is entitled to a preliminary injunction as set forth in its Motion, and asks that the Motion be **GRANTED,** and that the Court enter such other and further relief as is proper.

Dated: July 16, 2013.                              Respectfully Submitted,

**ESPINOSA|TRUEBA PL**

By: _s/Jorge Espinosa_____
    Jorge Espinosa, Esq. / F.B.N. 779032
    Jespinosa@etlaw.com
    Francesca Russo, Esq. / F.B.N. 174912
    frusso@etlaw.com
    1428 Brickell Avenue, Suite 100
    Miami, FL 33131
    Tel:  305.854.0900
    Fax:  855.854.0900

*Counsel for Plaintiff United Airlines, Inc.*